## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MICHAEL WOOD | : | Case No. 3:22-cv-351 |
| | : | |
| Plaintiff, | : | |
| | : | Judge Walter H. Rice |
| vs. | : | Magistrate Judge Elizabeth P. Deavers |
| | : | |
| ANTHONY REYNOLDS, ET. AL., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## REPORT AND RECOMMENDATION

This matter is before the Court for an initial screening of Plaintiff Michael Wood's Amended Complaint. ECF No. 11. Plaintiff, a state prisoner proceeding *in forma pauperis* and without the assistance of counsel, submitted his original Complaint in December of 2022 (the "Initial Complaint"). Filing No. 1. Upon initial review, this Court recommended that his unlawful arrest claims against Defendants Anthony Reynolds ("Reynolds") and Russell Garman ("Garman"), both officers of the German Township Police Department (the "Township"), and officer Zach Stortz ("Stortz") of the Clark County Sheriff's Department (the "County") in their individual capacities, and the unlawful search claim for the search of his vehicle against defendant Stortz in his individual capacity, be allowed to proceed, but that all remaining claims be dismissed without prejudice (the "R&R"). ECF No. 5. Plaintiff has now submitted an Amended Complaint (the "Amended Complaint"), ECF No. 11, in which he attempts to address

some of the deficiencies in the Initial Complaint as described in the Initial R&R and adds additional claims.[1]

The Undersigned considers the Amended Complaint, together with the Initial Complaint, under 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2) and **RECOMMENDS** that Plaintiff be allowed to **PROCEED** further at this time against defendant Stortz, in his individual capacity on Plaintiff's claims of civil conspiracy, false arrest, unlawful and search and seizure of Plaintiff's vehicle and its contents, and his failure to intervene claim as to Garman and Reynolds participation in Plaintiff's alleged wrongful arrest. The Undersigned further **RECOMMENDS** that the Court allow Plaintiff to **PROCEED** on his claims against defendant Garman in his individual capacity for civil conspiracy, wrongful arrest, wrongful search and seizure of Plaintiff's blood, malicious prosecution, *respondeat superior* claim as to the wrongful arrest claim brought against defendant Reynolds, and failure to intervene on defendants Reynolds and Stortz' participation in Plaintiff's alleged wrongful arrest and failure to intervene regarding Stortz' search and seizure of Plaintiff's vehicle and its contents. The Undersigned also **RECOMMENDS** that the Court allow Plaintiff to **PROCEED** on his claims against defendant Reynolds in his individual capacity for civil conspiracy, wrongful arrest, wrongful search and seizure of Plaintiff's blood, malicious prosecution, and failure to intervene on defendants

---

[1] In the body of the Amended Complaint, Plaintiff describes the actions taken by the Clark County Board of Commissioners and German Township Trustees, and states that "[t]he County and German Township are liable because they are 'complicit through complacency.' [And t]his is the third time I have filed a 1983 lawsuit against the Clark County Sheriff's Department." *See* ECF No. 11 at PageID 86–87. Because these entities are not named as defendants and are not parties to this case, the Court declines to analyze Plaintiffs statements with respect to these non-defendants and **RECOMMENDS** that any purported claims with respect to them be **DISMISSED**. S*ee Chapple v. Franklin Cnty.*, No. 2:21-CV-5086, 2022 WL 856815, at *16 (S.D. Ohio Mar. 23, 2022), *report and recommendation adopted as modified sub nom. Chapple v. Franklin Cnty. Sheriff's Officers FCCC 1 & 2,* No. 2:21-CV-05086, 2022 WL 16734656 (S.D. Ohio Nov. 7, 2022).

Garman and Stortz' participation in Plaintiff's alleged wrongful arrest and failure to intervene regarding Stortz' search and seizure of Plaintiff's vehicle and its contents.

Finally, the Undersigned **RECOMMENDS** that all remaining claims against Reynolds, Garman, and Stortz in their individual capacities, all claims against all Defendants in their official capacities, and any potential claims against unnamed defendants be **DISMISSED without prejudice**.

## I. INITIAL SCREENING STANDARD

Because Plaintiff is a prisoner seeking "redress from a governmental entity or officer or employee of a governmental entity," and is also incarcerated, the Court is required to conduct an initial screen of his complaint. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

To state a claim for relief, a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court must construe the complaint in plaintiff's favor, accept all well-pleaded factual allegations as true, and evaluate whether it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). However, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555).

Finally, in the interest of justice, this Court is required to construe a pro se complaint liberally and to hold it "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) and citing Fed. R. Civ. P. 8(f)). Even with such a liberal construction, a pro se complaint must still adhere to the "basic pleading essentials." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Specifically, a pro se "complaint 'must contain either direct or inferential allegations respecting all the material elements' to recover under some viable legal theory.'" *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)).

## II. PROCEDURAL HISTORY

On December 1, 2022, Plaintiff, a state prisoner proceeding *in forma pauperis* and without the assistance of counsel, submitted his Initial Complaint, alleging various claims against Reynolds, Garman, and Stortz (collectively "Defendants"). ECF No. 1. On January 24, 2023, this Court performed an initial review recommending that Plaintiff's unlawful arrest claims against all defendants in their individual capacities, and the unlawful search claim for the search of his vehicle against defendant Stortz in his individual capacity be allowed to proceed, but that all remaining claims in be dismissed without prejudice (the "R&R"). ECF No. 5.

Following Plaintiff's filing of motions seeking leave to amend his Initial Complaint and additional time to object to the Initial R&R, *see* ECF Nos. 6 & 7, on March 1, 2023, Plaintiff filed his Objection, and on March 9, 2023, he filed his Amended Complaint, ECF No. 11, seeking to address some of the deficiencies in the Initial Complaint as described in the R&R and adding additional claims. The Objection remains pending before the District Court.

In his Amended Complaint Plaintiff "incorporates the [Initial] Complaint . . . and Objections to [the Initial] R&R, as well as attached documents, [by reference] as if fully set forth

4

herein." ECF No. 11 at PageID 83. The Court notes that "in most circumstances [an] amended complaint supersedes the original complaint," rendering the amended complaint as the only operative complaint, unless "the amended complaint incorporates by reference the original." *Jones v. Montgomery Cnty. Dep't of Jobs & Fam. Servs.,* No. 3:18-CV-37, 2020 WL 529297, at *4 (S.D. Ohio Feb. 3, 2020), *report and recommendation adopted in part, rejected in part sub nom. Jones v. Montgomery Cnty. Dep't of Job & Fam. Servs., Child. Servs. Div.*, No. 3:18-CV-00037, 2020 WL 2059720 (S.D. Ohio Apr. 29, 2020) (quoting *Brown v. Voorhies*, No. 1:07-CV-463, 2009 WL 2730522, at *3 (S.D. Ohio Aug. 26, 2009)). In his Amended Complaint, because Plaintiff appears to intend to both supplement his Initial Complaint with additional facts and raise new claims, the Court shall construe Plaintiff's Initial and Amended Complaint together in this review.

However, because filings such as Plaintiff's Objections are not considered pleadings, any factual allegations contained within his Objection cannot be used to support his pleaded claims. *See Johnson v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 502 F. App'x 523, 541–42 (6th Cir. 2012) (citing Moore's Federal Practice § 12.34 ("The court may not ... take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).")). As such, the Court shall not consider Plaintiff's Objection or any potential "new facts" it may contain in this review.

In any event, given the comprehensive screen the Undersigned is conducting of both Plaintiff's Initial and Amended Complaint, this Report and Recommendation replaces the findings made, but does incorporate some of the analysis and recessitation of facts set forth in the Initial Report and Recommendation for purposes of brevity. Thus, Plaintiff's Objections are moot.

## III. CLAIMS AND DEFENDANTS

Plaintiff's Amended Complaint, like his Initial Complaint, details a series of events leading up to Plaintiff's arrest and detention on the evening of January 9, 2021, through April 2021, when his case was dismissed.[2]   ECF No. 11 at PAGEID 83–88; ECF No. 1 at PAGEID 2–6.  In summary, Plaintiff alleges he was followed, falsely arrested, had his person and vehicle searched, all without cause, his vehicle and its contents were then inappropriately seized, he was inappropriately touched and had his blood drawn unlawfully after his arrest, and was subsequently maliciously prosecuted, and that all defendants conspired together in doing so until all charges against him were dismissed.[3] *See Id.*; ECF No. 1 at PAGEID 2–6.

The Court previously grouped and categorized Plaintiff's allegations brought against all named defendants (officers Reynolds, Garman and Stortz) in his Initial Complaint, into potential constitutional violations for screening purposes as follows:

1. Fourth and Fourteenth Amendment false arrest claims of "failure to ID," Obstructing Official Business, and "OVI;"

2. Fourth and Fourteenth Amendment unreasonable search and seizure claims for search of his car, for contact with his genitals during a pat down, and search of his blood;

3. Fourth and Fourteenth Amendment malicious prosecution claims, (failure to ID, Obstructing Official Business, OVI);

---

[2] As previously noted, Plaintiff's claims are timely as, "[t]he applicable statute of limitations for 42 U.S.C. § 1983 claims arising in Ohio requires that claims be filed within two years of their accrual."  ECF No. 5 at PageID 41 (citing *Huntsman v. Perry Local Schools Bd. of Educ.,* 379 F. App'x 456, 461 (6th Cir. 2010)).

[3] The Court takes judicial notice of the Clark County Court of Common Pleas website reflecting that Plaintiff was the defendant in Case No. 21CR0032, which was dismissed on March 24, 2021.  *See* http://commonpleas.clarkcountyohio.gov/eservices/;jsessionid=D519EEE7BCE8C48C7C71D81F95524ADD?x=SV ZrrJ0JqtndLzZfRVykupbIbgHFcFLRtxH1lVQOo2xRuKfcVrqhqavom3fyIeLe66yLCZYE*uHcYhgvk-eXpA tfzxs5QxwDgUhiGLQd3B (last accessed January 15, 2023).

    4. Nine claims of conspiracy to interfere with constitutional rights under 42 U.S.C. §

1985; and

    5. Nine claims of failure to prevent conspiracy to interfere with constitutional rights

under 42 U.S.C. § 1986.

*See* ECF No. 5 at PageID 42.

      Upon initial review, this Court recommended that Plaintiff be allowed to proceed on his

wrongful arrest claims against Defendants Reynolds, Garman, and Stortz (in their individual

capacities), and on his unlawful vehicle search claim against Defendant Stortz in his individual

capacity, and that all remaining claims be dismissed. ECF No. 5 at PageID 39–40.

      Plaintiff then filed his Amended Complaint, addressing some of the claims recommended

for dismissal, and adding what the Court construes to be the following new claims:[4]

    1. Civil Conspiracy;

    2. Respondeat Superior;

    3. Failure to intervene; and

    4. Guilt by association.

ECF No. 11. The new claims are brought against all defendants named in the Initial Complaint.

Plaintiff brings these claims alleging substantiative and procedural due process, privileges and

immunities, and equal protection violations. *Id.* at PageID 85, 87–92.

      The specific facts relevant to each category are described in the Discussion sections

below.[5]

---

[4] In his Opposition Plaintiff indicates that the Court failed to address his search and seizure claims relating to his car's contents. To the extent it was unclear those claims were addressed with his car search and seizure claim in the R&R, the Court shall address those claims here.

[5] Plaintiff's Amended Complaint does not set forth any additional relief sought. *See* ECF No. 11. As such, "punitive and compensatory redress in the amount of $312,252.04 for violation(s) of [his] Natural, Constitutional and Statutory Rights" sought in the Initial Complaint, *see* ECF No. 1 at PAGEID 1, remain unchanged.

## IV. DISCUSSION

Plaintiff timely sought relief pursuant to § 1983 in his Initial Complaint. To state a claim under § 1983, the plaintiff must allege and show: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law.[6] *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (overruled in part by *Daniels v. Williams,* 474 U.S. 327, 330, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)); *Flagg Bros. v. Brooks,* 436 U.S. 149, 155–56, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); *Black v. Barberton Citizens Hosp.,* 134 F.3d 1265, 1267 (6th Cir. 1998). Both parts of this two-part test must be satisfied to support a claim under § 1983. *See Christy v. Randlett,* 932 F.2d 502, 504 (6th Cir. 1991).

The Court shall review the claims from both the Initial and Amended Complains to determine if summary dismissal of any of the claims are appropriate under 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2).

### A. Claims Previously Recommended to Proceed

Upon review of the Initial Complaint, this Court recommended Plaintiff be allowed to proceed on his wrongful arrest claims against Defendants Reynolds, Garman, and Stortz (in their individual capacities), and on his unlawful vehicle search and seizure claim against Defendant Stortz only in his individual capacity. ECF No. 5 at PageID 39–40. As Plaintiff's Amended Complaint adds further factual support to these claims, the **RECOMMENDATION** that Plaintiff be allowed to **PROCEED** on his wrongful arrest claims against Defendants Reynolds,

---

[6] The Court notes that police officers are generally considered to act under color of state law. *See United States v. Torres–Ramos,* 536 F.3d 542, 554 (6th Cir.2008); *Kostrzewa v. City of Troy,* 247 F.3d 633, 639 (6th Cir. 2001) (citing *Graham v. Connor*, 490 U.S. 386, 394 (6th Cir. 1989)). Plaintiff sufficiently alleges that all defendants were acting under color of law, therefore that element will not be addressed and is instead presumed in this section. *See generally* ECF No. 1.

8

Garman, and Stortz (in their individual capacities), and on his unlawful vehicle search and seizure claim against Defendant Stortz in his individual capacity, as set forth in the R&R, is reinstated and incorporated here.

### B. Abandoned Claims

In his Initial Complaint Plaintiff sought relief pursuant to 42 U.S.C. § 1985 (conspiracy to interfere with civil rights) and 42 U.S.C. § 1986 (action for neglect to prevent), alleging all defendants conspired to commit all claims alleged in his Initial Complaint and failed to prevent the same deprivations from occurring. ECF No. 1. In the R&R this Court found that Plaintiff failed to plead any racial or other cognizable class based discriminatory animus to which §§ 1985 and 1986 claims require and recommended dismissing both claims without prejudice. ECF No. 5 at PageID 54–55. As Plaintiff's Amended Complaint does not further address the 42 U.S.C. §§ 1985 and 1986 claims, *see generally* ECF No. 11, Plaintiff has abandoned those claims. As such, this Undersigned reinstates and incorporates the findings in the R&R **RECOMMENDING** that all claims brought pursuant to 42 U.S.C. §§ 1985 and 1986 against all Defendants in all capacities be **DISMISSED without prejudice**.

In the R&R, the Undersigned also recommended dismissing Plaintiff's unreasonable search of Plaintiff's genitalia claim against Defendants in their individual capacities, dismissing the claim against Stortz and Garman as neither were present for the search at issue, and dismissing the claim against Reynolds as that allegation derived from a single search incident to arrest which is insufficient to implicate constitutional concerns. ECF No. 5 at PageID 50–51 (citing *Shaffer v. Campbell*, No. 3:07-CV-P630-S, 2010 WL 2836083, at *2 (W.D. Ky. July 16, 2010) (collecting cases).

9

As Plaintiff's Amended Complaint does not further address his unreasonable search of genitalia claim this claim has been abandoned. As such, this Undersigned reinstates and incorporates the findings in the R&R **RECOMMENDING** that Plaintiff's unlawful search of his genitalia claim against all Defendants in their individual capacities be **DISMISSED without prejudice**.

### C. Civil Conspiracy

Although not specifically stated as a formal claim in his Initial or Amended Complaint, the Court collectively construes Plaintiff's allegations as bringing a civil conspiracy claim against all defendants for all actions alleged beginning with the decision to arrest Plaintiff for OVI. *See* ECF No. 11 at PageID 86 (alleging that "[b]ecause Reynolds, Garman and Stortz were all responsible for the unlawful OVI arrest, they are also liable for each of the other subsequent constitutional violations" of all defendants), PageID 88 (alleging that all defendants were "working to manufacturing an OVI case against me . . ."). Specifically the Court construes Plaintiff's civil conspiracy claim as alleging that Defendants conspired to obtain Plaintiff's OVI conviction by performing the following acts in furtherance of this alleged conspiracy: arresting Plaintiff for OVI without probable cause, searching and seizing Plaintiff's vehicle and its contents at the scene of his arrest and searching his person to obtain evidence against him, setting forth false statements to support obtaining an allegedly invalid warrant which allowed Defendants to further search and seize Plaintiff's blood and search/seize items from his vehicle, and giving false statements to prosecutor and the judge in efforts to have Plaintiff indicted and convicted of OVI. *See* ECF Nos .1 & 11 generally.

"A civil conspiracy claim under § 1983 ... lies where there is 'an agreement between two or more persons to injure another by unlawful action.' " *Robertson v. Lucas*, 753 F.3d 606, 622

(6th Cir. 2014) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)). To state a claim

of civil conspiracy under § 1983, on initial review a plaintiff must plead enough facts to support

a reasonable inference "that there was a single plan, that the alleged coconspirator shared in the

general conspiratorial objective, and that an overt act was committed in furtherance of the

conspiracy that caused injury to the complainant." *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th

Cir. 1985).

> It is the fundamental law of conspiracy or joint venture that a conspiracy is an
> agreement among two or more parties to achieve a result, plus an overt act by at
> least one conspirator to that end. Where either the intended result or any of the
> methods used are illegal, from the time of the first overt act all non-immune co-
> conspirators are liable for the acts of any co-conspirator.

*Macko v. Byron*, 555 F. Supp. 470, 476 (N.D. Ohio 1982) (citing *Dennis v. Sparks,* 449 U.S. 24,

101 S.Ct. 183, 66 L.Ed.2d 185 (1980); *Griffin v. Breckinridge,* 403 U.S. 88 at 103, 91 S.Ct. 1790

at 1798, 29 L.Ed.2d 338 (1971); *Cameron v. Brock,* 473 F.2d 608 (6th Cir. 1973); *Saier v. State*

*Bar of Michigan,* 293 F.2d 756, 761 (6th Cir. 1961)).

As it is unlikely that direct evidence such as testimony of a conspiratorial agreement will

exist, a plaintiff need only establish a possibility that the jury can "infer from the circumstances

[that the alleged conspirators] had a 'meeting of the minds' and thus reached an understanding"

to achieve the conspiracy's objectives. *Adickes v. Kress & Co.,* 398 U.S. 144, 158–59 (1970).

Civil conspiracy claims, however, are not supported by allegations that an "incident occurred

unexpectedly" or under "ambiguous circumstances." *Crawford v. Geiger*, 131 F. Supp. 3d 703,

712 (N.D. Ohio 2015), *aff'd in part, rev'd in part and remanded,* 656 F. App'x 190 (6th Cir.

2016). While a plaintiff may rely on circumstantial evidence to establish a conspiracy, they

nonetheless must prove an agreement, therefore, "merely failing to prevent the unlawful conduct

of one party or assisting an unlawful actor does not necessarily constitute a conspiracy." *Webb v. Local 73, Service Employees Intern., AFL-CIO,* 2002 WL 31497352, *2 (N.D. Ill. 2002).

Therefore, to proceed, Plaintiff must supply some facts, circumstantial or otherwise, that defendants Garman, Stortz, and Reynolds, agreed to obtain Plaintiff's wrongful conviction and took acts in furtherance of doing so. The Court construes the following facts as supporting Plaintiff's civil conspiracy claim:

- Garman and Stortz (and an unnamed officer[7] who is not named as a defendant) responded to Reynolds' call for backup to assist with his stop of Plaintiff. ECF No. 1 at 3–4.

- Garman and Stortz and an unnamed officer arrived on the scene where Reynolds had stopped Plaintiff, after which Stortz ordered Plaintiff out of the vehicle. *Id.* at PageID 4.

- Plaintiff was "coerced" to exit his vehicle by a perceived threat of bodily harm made by one of the officers, after which he was restrained, handcuffed, arrested for OVI (amongst other charges), and placed in Reynold's vehicle.[8] *Id.*

- Plaintiff observed that at the time a tow truck arrived Stortz was attempting to open Plaintiff's vehicle with a "Slim Jim" and remove a box of Bud Lite beer, *id.*, while Garman and Reynolds were present at the scene, both talking on the phone and aware of Stortz' entry into the vehicle. ECF No. 11 at PageID 83.

- Reynolds then left the scene to transport Plaintiff to jail and Garman and Stortz stayed behind to "clear the scene that Reynolds arbitrarily and maliciously created." ECF No. 11 at PageID 84; *see also* ECF No. 1 at PageID 4.

- The tow truck driver who towed Plaintiff's car from where Plaintiff was arrested to the German Township Police garage (the "GTP Garage") told

---

[7] As previously recommended in the R&R, although Plaintiff describes actions by an unnamed officer in the Initial Complaint, he does not attempt to bring claims against him or otherwise name him as a defendant. Because the unnamed officer is not named as a defendant and is not a party to this case, the Court continues to decline to analyze Plaintiff's statements with respect to this non-defendant and reiterates its **RECOMMENDATION** that any purported claims with respect to the unnamed officer be **DISMISSED without prejudice**. S*ee Shipp v. CoreCivic*, No. 16-2891, 2018 WL 4265259, at *5 (W.D. Tenn. Sept. 6, 2018) (not analyzing allegations against individuals discussed in the complaint but not named as defendants).

[8] The Court notes Plaintiff does not describe which officer or officers removed him from his vehicle and placed him under arrest.

Plaintiff that he had to wait for about two hours to tow Plaintiff's car because Garman and Stortz, who had stayed behind at the scene after Reynolds left with Plaintiff, were "trying to figure out a way to search the glove box and the trunk." ECF. No. 11 at PageID 84.

- Plaintiff alleges that finally it was decided, he presumes by Reynolds and Garman, to tow the vehicle to the GTP Garage in order to further determine how to lawfully gain access to it, and that "Stortz participated and/or failed to intervene." *Id.*

- Plaintiff's car was towed to the GTP Garage. ECF No. 1 at PageID 5.

- After the book-in process began at the jail, Garman and Reynolds left together to obtain a warrant, where they provided "false, misleading statements to the judge" to secure an allegedly invalid search warrant and to "mislead and influence the prosecutor to charge me with OVI and the grand jury to indict." ECF No. 11 at PageID 84–85.

- Plaintiff was transported from the jail and then to Springfield hospital where his blood was taken pursuant to the allegedly invalid warrant. ECF No. 1 at PageID 5.

- The same allegedly false and misleading statements were presented by Reynolds and Garman to the judge with the intent to mislead and influence the prosecutor to charge Plaintiff with OVI and for the grand jury to indict. ECF No. 11 at PageID 85.

- After Plaintiff was indicted for OVI, a suppression hearing was held where a judge found there was a lack of probable cause to arrest Plaintiff, after which the prosecutor filed a motion to dismiss all charges against Plaintiff, which was granted. ECF No. 1 at 5–6; ECF No. 11 at 85–86.

The facts, as alleged, although a close case, provide enough detail that allows the court to draw a reasonable inference that the defendants are liable for the alleged misconduct. Thus, even though Defendants may not be personally involved and therefore not individually liable for each claim as alleged, they may all still be held liable for the violations of all Defendants as co-conspirators.

13

As taken collectively, the factual allegations provide enough detail to state a claim, the Undersigned **RECOMMENDS** Plaintiff's civil conspiracy claims against all defendants **PROCEED**.

### D. Amended Claims

Plaintiff alleges additional facts in his Amended Complaint addressing Plaintiff's Fourth and Fourteenth Amendment unreasonable search and seizure claims for search and seizure of his car, its contents, and search and seizure of his blood, as well as Fourth and Fourteenth Amendment malicious prosecution claims against all defendants initially alleged in his Initial Complaint. *See* ECF No. 11. The Court now addresses those claims as expounded upon in the Amended Complaint.

#### a. Official Capacity claims

In the R&R this Court explained that where Plaintiff sues Defendants in their official capacities, those claims are addressed as being brought against the defendants they represent (here, all defendants are employed by either the Township or the County), and that in order to state a municipal liability claim under § 1983 against the Township or the County, Plaintiff must allege both a right secured by the Constitution or laws of the United States and that the violation of that right was "directly caused by a municipal policy or custom." ECF No. 5 at PageID 44 (citing *Nichols v. Wayne Cnty. Mich.*, 822 F. App'x 445, 448 (6th Cir. 2020) (citing *Hardrick v. City of Detroit*, 876 F.3d 238, 243 (6th Cir. 2017))). This Court further explained that a plaintiff may prove an unconstitutional "policy" or "custom" by demonstrating one of the following:

> (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

14

*Id.* (citing *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005))). By finding that because the Initial Complaint did not refer to any official policy or custom of the Township or County, that Plaintiff had failed to allege any facts from which the Court could conclude that an official policy or custom resulted in a violation of Plaintiff's constitutional rights, this Court recommended dismissal of Plaintiff's official capacity claims against Defendants. ECF No. 5 at PageID 44.

In his Amended Complaint, Plaintiff does not allege that the Township or County had any written or unwritten policies under which they might have any liability and instead appears to establish official capacity claims by alleging the County and Township ratified the defendant's actions, they inadequately trained/supervised the defendants, and that there was a custom of tolerance in place in both the Township and the County. ECF No. 11 at PageID 84–86. For the reasons set forth below along with the prior findings in the R&R, which are reinstated and incorporated here, the Court reiterates its **RECOMMENDATION** that all official capacity claims against all Defendants be **DISMISSED without prejudice**.

### 1. *Custom of tolerance and failure to train*

A custom-of-tolerance claim requires a showing that there was a pattern by the municipality of inadequately investigating similar claims. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir. 2005). To establish a custom of inaction, Plaintiff must allege:

> (1) "a clear and persistent" pattern of unconstitutional conduct by municipal employees; (2) the municipality's "notice or constructive notice" of the unconstitutional conduct; (3) the municipality's "tacit approval of the unconstitutional conduct, such that [its] deliberate indifference in [its] failure to act can be said to amount to an official policy of inaction"; and (4) that the policy of inaction was the "moving force" of the constitutional deprivation, such that the plaintiff's constitutional injury was directly caused by the conduct of the municipality rather than simply by the conduct of the municipal employee.

*D'Ambrosio v. Marino*, 747 F.3d 378, 387–88 (6th Cir. 2014) (quoting *Doe v. Claiborne Cnty.,* 103 F.3d 495, 508 (6th Cir. 1996) (citation omitted)).

A failure-to-train claim, also requires a showing of "prior instances of unconstitutional conduct demonstrating that the municipality had ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Miller v. Sanilac Cnty.,* 606 F.3d 240, 255 (6th Cir.2010) (cleaned up). Under an inadequate training or supervision theory, municipal entities are liable for constitutional wrongs of their employees when the failure to train or supervise is so deficient that it shows "deliberate indifference to the rights" of those with whom the employees will interact, *and the failure must have actually caused the wrongdoing to occur. City of Canton v. Harris*, 489 U.S. 378, 388, 390, n. 10 (1989) (emphasis added) (explaining deliberate indifference occurring when the nature of the employees' duties or a previous pattern of violations makes it obvious that, without further training, the employee is highly likely to violate citizens' federally protected rights). For example, where a complaint "identifies inadequate training and supervision on the particular issues," it is sufficient to place the municipality "on notice of the claims against which it must defend and for which it might have municipal liability under the governing pleading standard." *Jackson v. City of Cleveland*, 622 F. Supp. 3d 636, 643 (N.D. Ohio 2022).

Plaintiff alleges that he communicated with the "Clark County Board of Commissioners and German Township Trustees" and Township Secretary Korina Emory about being targeted, retaliated against, arbitrarily harassed, molested, tormented and abused by the defendants, but that nothing was done.[9] ECF No. 11 at PageID 86. He then concludes that this refusal to

---

[9] Plaintiff indicates he communicated these complaints to Korina Emory in the process of requesting copies of the personnel records of "former officers John Betts, Katy Finney, Joshua Perry and Anthony Reynolds" after his case was dismissed. ECF No. 11 at PageID 16.

communicate with Plaintiff or otherwise comply with his requests for officer personnel records by the County and Township, and their alleged failure to discipline officers, presumably in response to his complaints, "shows that there is a failure to train, supervise and discipline and/or [the Entity Defendants] are explicitly condoning the deliberate in difference [sic] to [Plaintiff's] constitutional rights. . . ."  ECF No. 11 at PageID 86–87.

Plaintiff does not, however, discuss any other incidents of wrongful arrest, being targeted, retaliated against, arbitrarily harassed, molested, tormented and abused, aside from the single incident at issue in his Complaint.  While Plaintiff does allege that he previously sued Clark County for example, *see* ECF No. 11 at PageID 87, he does not indicate what for.  Plaintiff does not indicate why he wanted the personnel files of the other officers noted, or how the alleged failure to supply him with these files, not to mention why he was asking for them, or even imply why training would have made the outcome in his case different.  In other words, Plaintiff has not set forth *any* facts that there were prior instances of similar misconduct to show that either municipality had a custom of inaction or was otherwise on notice that its training and supervision with respect to Plaintiff's claims was deficient and likely to cause injury. *See Miller,* 606 F.3d at 255.

For the reasons set forth previously in the R&R, and as described herein, as Plaintiff's Amended Complaint pleads no facts that any of his alleged constitutional injuries were directly caused by the conduct of the municipality rather than simply by the conduct of the municipal employee, that a custom of inaction existed relating to the claims alleged, or that the constitutional injuries alleges resulted from a failure to train, the Undersigned **RECOMMENDS** that any custom of tolerance and failure to train official capacity claims against all Defendants be **DISMISSED without prejudice**.

17

### 2. *Ratification*

In relation to his ratification claim, Plaintiff alleges that the "defendants were all 'constitutional officers' . . . and made the final decision with regard to all unconstitutional acts perpetrated, concluding that "these actions were approved by the employment municipality." ECF No. 11 at PageID 86.

A municipality can be held liable under § 1983 for a single decision by the municipality's policymakers. *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993) (citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479–80 (1985)). However, such liability attaches to an official's unconstitutional action "only when the official is the one who has the 'final authority to establish municipal policy with respect to the action ordered.'" *Id.* (quoting *Feliciano*, 475 U.S. at 481 (plurality opinion). Put another way, "[m]ere authority to exercise discretion while performing particular functions does not make a municipal employee a final policymaker unless the official's decisions are final and unreviewable and are not constrained by the official policies of superior officials." *Id.* (citing *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, (1988) (plurality opinion)). Such authority to make final policy comes from customs or legislative enactments, or by delegation via other officials who have final policymaking authority. *Pembaur,* 475 U.S. at 483 (plurality opinion). For example, under this standard, where a complaint describes a longstanding policy of "massive power delegated to subordinate officers," including in policing at the individual level, a ratification claim is sufficiently plead. *Jackson v. City of Cleveland*, 622 F. Supp. 3d 636, 643 (N.D. Ohio 2022).

Plaintiff's Amended Complaint fails to allege such a claim in multiple respects. First, Plaintiff does not allege that any of the defendants had final policymaking authority or that they had been delegated such authority. While Plaintiff appears to argue that Garman, as a lieutenant

18

and Reynolds' supervisor, ratified and participated in the constitutional violations that Plaintiff allegedly suffered by Reynolds' actions, nowhere in his Complaint does Plaintiff allege that Garman (or the other defendants) had authority to make final and unreviewable decisions such that any of them would constitute an official with final decision-making authority.

As such, for these reasons, and the findings in the R&R regarding Plaintiff's official capacity claims, this Court **RECOMMENDS** that any official capacity claims brought on the basis of ratification by a final decisionmaker against all Defendants be **DISMISSED without prejudice**.

### b. Unreasonable search and seizure claims

The Fourth Amendment's protection against unreasonable searches and seizures, made applicable to the states through the Fourteenth Amendment, protects individuals from: (1) traffic stops when the officer lacks probable cause to believe that a civil infraction occurred or reasonable suspicion that a crime is being committed; and (2) arrests or detentions without probable cause. *See Bazzi v. City of Dearborn*, 658 F.3d 598, 603 (6th Cir. 2011) ("[A] vehicle stop by a police officer is a 'seizure' within the meaning of the Fourth Amendment."); *Manuel v. City of Joliet*, 580 U.S. 357, 364 (2017); *Baker v. McCollan*, 443 U.S. 137, 142 (1979).

In his Initial Complaint Plaintiff alleged unlawful search claims against Reynolds, Garman, and Stortz for a search and seizure of his vehicle and its contents by Stortz that occurred after his arrest, and a search and seizure of his person due to the drawing of his blood pursuant to what he asserts was an improper search warrant executed by Reynolds and Garman. ECF No. 1 at PageID 4–5. This Court recommended dismissal of all claims except the wrongful search and seizure claims against Stortz for the search and seizure of Plaintiff's vehicle. ECF No. 5 at

PageID 49.  The Court now addresses those claims recommended for dismissal as expounded upon in the Amended Complaint.

### 1. *Search and seizure of car and contents*

This Court previously found that the allegations in the Complaint were sufficient to suggest that the search and seizure of Plaintiff's vehicle and its contents as to defendant Stortz were without probable cause (as the search resulted from the arrest and OVI charges, which were dismissed due to lack of probable cause to arrest), but recommended dismissal of Plaintiff's unlawful search and seizure of Plaintiff's vehicle and its contents claims against defendants Reynolds and Garman as he pleaded no facts establishing that officers Reynolds or Garman participated in the vehicle search or seizure.  ECF No. 5 at PageID 49.  Plaintiff's Amended Complaint now provides additional details regarding the progression of the search of Plaintiff's vehicle and its contents.  However, the additional facts alleged still do not support individual claims against Reynolds or Garman for search and seizure of Plaintiff's vehicle and its contents.[10]

Plaintiff alleges Garman and Stortz stayed behind with his vehicle after he was transported to jail by Reynolds.  ECF No. 1 at PageID 84.  Further, Plaintiff alleges he was told by the tow truck driver sent to pick up Plaintiff's vehicle that "defendants"[11] stayed with Plaintiff's car following Plaintiff's arrest for several hours "trying to figure out a way to search

---

[10] The Court notes that with respect to Plaintiff's claim for a Fourth Amendment violation for unreasonable search and seizure of his car and its contents, Plaintiff has identified the right and alleges that it was violated by defendants as police officers acting under color of state law.  That is, he claims that Defendants as law enforcement officers, deprived him of rights and privileges secured by the United States Constitution, including the Fourth Amendment right to be free from unlawful searches and seizures.  As such, those elements need not be addressed further.

[11] While Plaintiff fails to name which defendants, the Court presumes he refers to defendants Garman and Stortz as he alleges Reynolds left the scene to transport Plaintiff to the jail, *see* ECF No. 1 at PageID 4, rendering it impossible for Reynolds to have stayed behind.

the glove box and truck 'because there might have been a gun in the glove box or a dead body in the trunk." *Id.* Plaintiff then "presume[s] that Reynolds and Garman made the final decision to have [his] car towed to the German Township garage . . . and [that] Stortz participated [in the decision] and/or failed to intervene." *Id.* Ultimately, however, Plaintiff alleges that his car was towed to the German Township Garage where he believes Chief of German Town Police Michael Stitzel performed the search. ECF No. 1 at PageID 5.

As such, the facts as pleaded indicate the following: Stortz initially searched the passenger compartment of the vehicle and seized some of its contents immediately following Plaintiff's arrest, ECF No. 1 at PageID 4, Stortz and Garman stayed with the vehicle after Reynolds left the scene to take Plaintiff to jail, Stortz and Garman wanted to, but did not search the vehicle's glove compartment and trunk prior to a decision being made by an unknown party (which Plaintiff presumes was Reynolds or Garman) to have the vehicle towed to the German Township Garage, and upon arrival of the vehicle at the German Township Garage, Plaintiff believes it was searched not by any of the Defendants, but by the chief of police, who is not a party to this suit, ECF No. 11 at PageID 84–85. As such, Plaintiff still does not allege Garman or Reynolds took part in the initial search of the vehicle or its contents by Stortz, or that either Garman or Reynolds ever searched or seized the vehicle or its contents at any time afterwards. Further, Plaintiff "presumes" Reynolds and Garman decided to have Plaintiff's car towed back to the station and Stortz participated in the decision and/or failed to intervene but there is no circumstantial evidence to support such a claim, especially since Plaintiff alleges Stortz and Garman remained behind with the vehicle, but simultaneously alleges that Reynolds was involved in the decision to have the vehicle towed but not Garman, who was physically present at the scene when Reynolds was not. Such, conclusory claims, unsupported by specific facts are

insufficient to state a plausible claim for relief. *See High v. Silverdal Core Civic of Am.*, No. 1:19-CV-00214, 2019 WL 4723803, at *1 (E.D. Tenn. Sept. 26, 2019) (citing *Iqbal*, 556 U.S. at 681).

The Undersigned reiterates the **RECOMMENDATION** that the Court allow Plaintiff to **PROCEED** at this time on his unlawful search and seizure claim for the vehicle against Stortz in his individual capacity, and clarifies that Plaintiff also be allowed to proceed against Stortz in his individual capacity for search and seizure of the vehicle's contents. However, because Plaintiff's vehicle and contents search and seizure allegations against Reynolds and Garman are insufficient, the Undersigned **RECOMMENDS** that all claims against Reynolds and Garman in their individual capacities related to the search and seizure of the vehicle and its contents be **DISMISSED without prejudice.**

### 2. Search and Seizure of Blood

The taking of blood samples is a search for Fourth Amendment purposes. *Schmerber v. California,* 384 U.S. 757, 761 (1966). The Fourth Amendment requires that a search or seizure be supported by probable cause, which is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Abboud*, 438 F.3d 554, 571 (6th Cir. 2006) (quoting *United States v. Padro*, 52 F.3d 120, 122–23 (6th Cir. 1995)).

The Court previously recommended dismissal of the blood search claims against Defendants because Plaintiff failed to allege any facts supporting his claim that Stortz was involved in the blood search, and that in relation to Reynolds and Garman that his complaint contained "no details" regarding their involvement in the blood draw aside from being present or in obtaining the warrant relied upon to effectuate the blood draw or its sufficiency. ECF No. 5 at PageID 51–52. In his Amended Complaint Plaintiff alleges that both "Reynolds and Garman

presented false, misleading statements to the judge in order to influence and persuade him to issue the "invalid" search warrant" and that the warrant's issuance and execution was untimely pursuant to Ohio law. ECF No. 11 at PageID 85. These allegations, while very slight, are enough to allow Plaintiff's claim to proceed against Garman and Reynolds. However, the Amended Complaint, like the Initial Complaint, contains no allegations that Stortz was involved in obtaining the blood search.

It is therefore **RECOMMENDED** that the Court allow Plaintiff to **PROCEED** against Garman and Reynolds in their individual capacities for Plaintiff's unlawful search and seizure of his blood claim, but that all claims against Stortz in his individual capacity for that same claim be **DISMISSED without prejudice**.

### 3. Malicious prosecution claims

In the Initial R&R, this Court found that no reasonable inference could be drawn from the Initial Complaint that any Defendants made, influenced, or participated in the decision to prosecute Plaintiff. *See* ECF No. 5 at PageID 53. In his Amended Complaint Plaintiff submits defendants Garmin and Reynolds presented "false and misleading statements" to the judge "with the intent to mislead" and "influence the prosecutor to charge [Plaintiff] with OVI and [for] the grand jury to indict," and that Reynolds provided testimony in support of the indictment. ECF No. 11 at PageID 85.

"The Sixth Circuit recognizes a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment, which encompasses wrongful investigation, prosecution, conviction, and incarceration." *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (cleaned up). "To succeed on a malicious-prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment," Plaintiff must prove four elements. *Sykes*,

23

625 F.3d at 308–09.   The Sixth Circuit in *Wright v. City of Euclid, Ohio*, described the elements as follows:

> (1) that a criminal prosecution was initiated against him and that the defendant "made, influenced, or participated in the decision to prosecute; (2) that there was a lack of probable cause for the criminal prosecution; (3) that, as a consequence of a legal proceeding, [the plaintiff] suffered a deprivation of liberty apart from the initial seizure; and (4) that the criminal proceeding was resolved in [the plaintiff's] favor.

*Wright v. City of Euclid, Ohio*, 62 F.3d 852, 875–76 (6th Cir. 2020) (cleaned up).  The Sixth Circuit's detailed discussion in *Wright* of each element of a malicious prosecution claim is instructive here.

Here, there is no question that the fourth element has been met as Plaintiff alleges that "[t]he prosecutor filed a motion to dismiss due to lack of evidence," after the trial court judge found there was lack of probable cause for Plaintiff's arrest, which resulted in the case against Plaintiff being dismissed.  ECF No. 11 at PageID 85.  Additionally, regarding the second element regarding lack of probable cause, similar to *Wright*, "[f]or the same reasons set forth above regarding [Plaintiff's] false-arrest claim, a reasonable jury could likewise find that there was a lack of probable cause to prosecute [Plaintiff]."  *Wright*, 62 F.3d 876.

In relation to the first element the Sixth Circuit explained that determining if an officer "influenced or participated in the decision to prosecute hinges on the degree of the officer's involvement and the nature of the officer's actions." *Id.* at 876 (quoting *Sykes*, 625 F.3d at 311 n. 9) (internal quotation omitted). While giving of false testimony before a grand jury, for example, is a clear example of participation, "an officer can also influence or participate in the decision to

prosecute by falsely prompting or urging a prosecutor's decision to bring charges in the first place." *Id.* (citing *Webb v. United States*, 789 F.3d 647, 666 (6th Cir. 2015)).

No reasonable inference can be drawn that Stortz made, influenced, or participated in the decision to prosecute Plaintiff as there are no allegations regarding Stortz' personal involvement after the initial arrest and search of the vehicle and its contents. On the other hand, as Reynolds participated via giving testimony before the grand jury, for the purposes of initial review, Plaintiff has met his burden as to Reynolds on element one but has not for Stortz.

The extent of Garman's involvement in Plaintiff's prosecution is unclear from Plaintiff's pleadings. Plaintiff was indicted on the OVI charges, and alleges Garman provided statements to a judge to obtain a search warrant which presumably were considered when the charges were brought and in obtaining his indictment. ECF No. 11 at PageID 85. While Plaintiff merely concludes that in addition to that statement that Garman "continued" to influence the prosecutor to charge him with OVI and the grand jury to indict, such claims when coupled with the fact that a finding of a lack of probable cause for Plaintiff's arrest was ultimately made, is enough at this stage to allow Plaintiff's claim against Garman to proceed. While a prosecutor's decision to dismiss a case because of lack of probable cause "does not suggest that probable cause never existed," *Holzemer v. City of Memphis*, No. 06-2436, 2008 WL 8954888, at *22–23 (W.D. Tenn. Dec. 31, 2008), *aff'd,* 621 F.3d 512 (6th Cir. 2010), whether such a finding is appropriate at this stage of the proceedings deserves further development.

In relation to element three addressing a deprivation of liberty, while an "initial arrest alone is an insufficient deprivation of liberty to support a claim for malicious prosecution," post arrest jail and hospital confinement "for many hours after the initial seizure but before being released" is enough to be a question for the jury. *Id.* (internal quotations omitted) (quoting

*Noonan v. Cty. of Oakland*, 683 F. App'x 455, 463 (6th Cir. 2017)). Here, as Plaintiff alleges he was detained both in the jail and the hospital subsequent to his arrest the third element is met.

It is therefore **RECOMMENDED** that the Court allow Plaintiff to **PROCEED** against Garman and Reynolds in their individual capacities for Plaintiff's malicious prosecution claim, but that all claims against Stortz in his individual capacity for that same claim be **DISMISSED without prejudice**.

### c. New Claims

In addition to the Civil Conspiracy claim addressed previously here, the Court construes the Amended Complaint as alleged the following new claims: Respondeat Superior; Failure to intervene; and "guilt by association." *See* ECF No. 11. Plaintiff brings these new claims alleging substantiative and procedural due process, privileges and immunities, and equal protection[12] violations. *Id.* at PageID 85, 87–92.

#### 1. *Respondeat Superior*

Although not explicitly alleged as a freestanding claim, to the extent Plaintiff is suing any of the named defendants based on their supervisory positions, it is well-settled that *respondeat superior* is generally not applicable in § 1983 actions. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). This is so as "§ 1983 liability must be based on more than respondeat superior,

---

[12] The Court notes, "[t]he Equal Protection Clause of the Fourteenth Amendment provides citizens a degree of protection independent of the Fourth Amendment protection against unreasonable searches and seizures." *United States v. Avery,* 137 F.3d 343, 352 (6th Cir.1997). To successfully plead a § 1983 claim of selective enforcement, however, a plaintiff's pleading must satisfy the following three elements:

> (1) a state actor must single out a person or persons belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations; (2) he must initiate the prosecution with a discriminatory purpose; and (3) the prosecution must have a discriminatory effect on the group to which plaintiff belongs.

*Conrad v. City of Berea*, 243 F. Supp. 3d 896, 902 (N.D. Ohio 2017).

> Plaintiff makes no allegation of being a member of an identifiable group in either the Initial or the Amended Complaint.

or the right to control employees." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (citing *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)). A supervisory official's failure to supervise, control or train an offending individual is not actionable unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.*

As an initial matter, implicit in a *respondeat superior* claim is that the defendant is or has supervisory capacity over an offender. Here, of the three named defendants, Plaintiff only alleges that Garman is a supervisor, and that he only supervises Reynolds, not Stortz. ECF No. 1 at PageID 87. As such, to the extent Plaintiff intended to bring a *respondeat superior* claim against Reynolds or Stortz, or against Garman for Stortz' actions, the Undersigned **RECOMMENDS** those claims be **dismissed without prejudice**.

In relation to Garman, Plaintiff appears to allege that Garman is liable for all of Reynolds' unlawful actions due to his status as Reynolds' supervisor. In relation to Plaintiff's false arrest claim, as Garman directly participated in the arrest with Reynolds, he could be liable under a *respondeat superior* theory for Reynolds' actions. However, there is no indication that Garman was aware of, or participated in Reynolds' actions to secure the warrant for the blood search or his any statements made in support of Plaintiff's prosecution.

It is therefore **RECOMMENDED** that the Court allow Plaintiff to **PROCEED** against Garman in his individual capacity as Reynolds' supervisor under a *respondeat superior* theory for the false arrest claim only, but that all other claims against Garman in his individual capacity

as liable for the alleged wrongful actions of Reynolds under a *respondeat superior* theory be

**DISMISSED without prejudice**.

### d. Failure to Intervene

After each claim Plaintiff alleges all defendants either participate in the alleged violations or failed to intervene.  *Id.* at PageID 5, 7–9.  Although not listed as a separate claim Plaintiff alleges in his Amended Complaint, the Court construes the allegations as a general allegation that all Defendants are liable for failure to intervene on all claims.  ECF No. 11 at PageID 87.

To state a § 1983 claim on the basis of a failure-to-intervene, the plaintiff must allege that the Defendants "(1) observed or had reason to know that [constitutional harm] would be or was [taking place], and (2) had both the opportunity and the means to prevent the harm from occurring." *Sheffey v. City of Covington*, 564 Fed. App'x 783, 793 (6th Cir. 2014) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)) (internal quotation marks omitted). This is true regardless of whether the individual violating the plaintiff's constitutional rights is a fellow officer or a supervisor. *Smith v. Heath*, 691 F.2d 220, 224-26 (6th Cir. 1982). Defendants cannot be held liable, however, unless there was "a realistic opportunity to intervene and prevent harm." *Wells v. City of Dearborn Heights*, 538 Fed. App'x 631, 640 (6th Cir. 2013) (internal quotation marks and citation omitted).

Law enforcement officers have a duty to intervene to prevent an arrest not supported by probable cause.  *Bunkley v. City of Detroit, Michigan*, 902 F.3d 552, 566 (6th Cir. 2018). "[O]fficers who are present at the scene of a violation of another's civil rights and who fail to stop the violation [also] can be liable under § 1983." *Holloran v. Duncan*, 92 F. Supp. 3d 774, 795 (W.D. Tenn. 2015), *amended*, No. 13-1050, 2015 WL 12434364 (W.D. Tenn. Apr. 23, 2015) (cleaned up).

Here, Plaintiff does not allege Stortz' involvement in or awareness of any claims other than the false arrest claim and the unlawful search and seizure of the car and its contents claim. As this Court recommends dismissal of Plaintiff's wrongful search and seizure of Plaintiff's car and its contents claim against Garman and Reynolds, the only remaining claim to which Plaintiff sufficiently alleges Stortz was aware of is the wrongful arrest claim against all Defendants.[13]  It is therefore **RECOMMENDED** that the Court allow Plaintiff to **PROCEED** against Stortz in his individual capacity for failure to intervene regarding Garman and Reynolds participation in the false arrest claim, but that all remaining claims against Stortz in his individual capacity under this theory be **DISMISSED without prejudice**.

In relation to Plaintiff's false arrest claim, as Stortz, Garman, and Reynolds directly participated in the arrest with Garman, Garman and Reynolds could also be liable for the other defendants' actions under a failure to intervene theory.  Moreover, as Garman and Reynolds were present and had the opportunity to prevent Stortz from searching and seizing the vehicle and its contents, they may also be liable for failing to intervene on Stortz' allegedly unlawful search and seizure of Plaintiff's car and its contents.  However, in relation to the blood search and seizure claims, there is no indication that Garman or Reynolds had knowledge of the other's submission of affidavits to the judge in support of the warrant or any other act where they allegedly sought to influence the prosecutor's decision to bring charges and the indictment, or

---

[13] The Court notes that he alleges that he saw Stortz, Reynolds, and Garmin talking prior to Stortz searching his vehicle and *presumes* they agreed to "conspire to break into [his] car," concluding Stortz making the final decision to proceed, and *presuming* Garman and Reynolds "made the final decision to have [his] car towed . . . in order to have more time to scheme a way to search the glove box and truck for evidence of other crimes."  *Id.* at PageID 88, 90 (emphasis added).  He then alleges that "Stortz participated and/or failed to intervene."  *Id.*  As the Court recommends dismissal of Plaintiff's unlawful search and seizure claims regarding the search of the car and its contents against Garman and Reynolds, Plaintiff's failure to intervene claim relating to those actions need not be addressed.

the opportunity to prevent the other from doing so.  As such, all remaining claims for failure to intervene against Garman and Reynolds should fail.

It is therefore **RECOMMENDED** that Plaintiff's failure to intervene claim against Garman and Reynolds be allowed to **PROCEED** in relation to all Defendants involvement in Plaintiff's arrest and for failing to intervene on Stortz' search and seizure of Plaintiff's vehicle and its contents.  All other claims against Garman and Reynolds for failure to intervene in their individual capacities be **DISMISSED without prejudice**.

### e.  Guilt by association

Plaintiff alleges defendants are liable under a guilt by association theory for all alleged claims.  *See* ECF No. 1 at Page ID 5, 7–10.  Guilt by association, however, is not a freestanding claim and instead is generally considered in relation to evidence of an inference of guilt considered by factfinders. *See e.g. United States v. Polasek*, 162 F.3d 878, 883 (5th Cir. 1998) (discussing guilt by association as an evidentiary issue relating to underlying criminal charges, not as an individual cause of action); *Rivers v. Smith*, No. 13CV00549NGGLB, 2015 WL 8489963, at *10, 12 (E.D.N.Y. Dec. 8, 2015) (discussing guilt by association as a potential inference of guilt in a criminal prosecution); *Madrigal v. Cates*, No. CV 13-560 PA MRW, 2014 WL 2772637, at *8 (C.D. Cal. Apr. 4, 2014), *report and recommendation adopted*, No. CV 13-560 PA MRW, 2014 WL 2772650 (C.D. Cal. June 16, 2014) (discussing guilt by association as an evidentiary matter in a criminal proceeding).

It is therefore **RECOMMENDED** that all claims against all Defendants in their individual capacities for "guilt by association" be **DISMISSED without prejudice** for failure to state a claim on which relief may be granted.

## V.  Conclusion

Having conducted the initial screen required by law, the Undersigned **RECOMMENDS** that the Court allow Plaintiff to **PROCEED** at this time:

A. Plaintiff's civil conspiracy claim against Defendants Reynolds, Garman, and Stortz in their individual capacities;

B. Plaintiff's unlawful arrest claim against Defendants Reynolds, Garman, and Stortz in their individual capacities;

C. Plaintiff's unlawful search claim for the search and seizure of Plaintiff's vehicle and its contents against defendant Stortz in his individual capacity;

D. Plaintiff's unlawful search of blood against defendants Garman and Reynolds in their individual capacities;

E. Plaintiff's malicious prosecution claim against defendants Garman and Reynolds in their individual capacities;

F. Plaintiff's *respondeat superior* claim against defendant Garman in his individual capacity as to the wrongful arrest claim brought against defendant Reynolds; and

G. Plaintiff's failure to intervene claim against Stortz, Garman, and Reynolds in their individual capacities for failure to intervene regarding all Defendants participation in Plaintiff's arrest, and against Garman and Reynolds for their failure to intervene regarding Stortz' search and seizure of Plaintiff's vehicle and its contents.

The Undersigned further **RECOMMENDS** that the Court **DISMISS without prejudice** the remaining claims against all Defendants (and non-parties) in the Complaint in their individual and official capacities.

Should the District Judge adopt this recommendation, the Undersigned further **RECOMMENDS** that the District Judge find that any appeal in this matter by Plaintiff would not be taken in good faith, and that Plaintiff may not proceed on appeal *in forma pauperis*.

Plaintiff is reminded that he must keep this Court informed of his current address and promptly file a notice of his new address if he is released or transferred to a different institution.

### Procedure on Objections to Report and Recommendation

If any party objects to this Report and Recommendation, that party may, **within fourteen (14) days** of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Dated: August 17, 2023                          */s/ Elizabeth A. Preston Deavers*
                                                ELIZABETH A. PRESTON DEAVERS
                                                UNITED STATES MAGISTRATE JUDGE