IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL WOOD                                :

        Plaintiff,

                                        Case No. 3:22-cv-351
    v.                                      :
                                        JUDGE WALTER H. RICE

ANTHONY REYNOLDS, et al.,

        Defendants.                   :

---

DECISION AND ENTRY OVERRULING PLAINTIFF MICHAEL WOOD'S
MOTION FOR RECONSIDERATION (DOC. #19) AND SUPPLEMENTAL
MOTION FOR RECONSIDERATION (DOC. #31)

---

       This matter comes before the Court on a Motion for Reconsideration, Doc.

#19, and a Supplemental Motion for Reconsideration filed by Plaintiff Michael Wood

("Plaintiff" or "Wood"). Doc. #31. No response was filed by Defendants Anthony

Reynolds ("Reynolds"), Major Russell Garman ("Garman"), or Zach Stortz ("Stortz")

(collectively "Defendants") and, as the time for so filing has elapsed, their right to

file a response is considered waived. For the reasons set forth below, Plaintiff

Michael Wood's Motion for Reconsideration, Doc. #19, and Supplemental Motion

for Reconsideration, Doc. #31, are OVERRULED.

## I. Procedural Background

On December 1, 2022, Wood, a state prisoner proceeding *in forma pauperis* and *pro se*, submitted his Initial Complaint, alleging various claims against Reynolds, Garman, and Stortz. Doc. #1. On January 24, 2023, the Magistrate Judge issued a Report and Recommendations ("R&R"), Doc. #5, recommending that Wood's unlawful arrest claims against all Defendants in their individual capacities, and the individual capacity claim against Defendant Stortz for the unlawful search of Wood's vehicle, be allowed to proceed, but that all remaining claims be dismissed without prejudice.

Following this, Wood filed motions seeking both leave to amend his Initial Complaint and additional time to object to the Initial R&R. *See* Docs. ##6, 7. The motion for additional time to object was granted, Doc. #8, but the motion for leave to file was denied without prejudice for failing to inform the Court how Wood intended to amend his Complaint. Doc. #9, PageID #63. However, because the motion was filed before the deadline for objections on the initial R&R, the Magistrate Judge set a March 27, 2023, deadline for amended pleadings. *Id.* at PageID #63. Then, on March 1, 2023, Plaintiff filed his Objections to the R&R, Doc. #10, and eight days later filed an Amended Complaint, Doc. #11, which sought to address some of the Initial Complaint's deficiencies described in the R&R, Doc. #5, as well as to add additional claims against Defendants. *See generally* Doc. #11.

2

On August 17, 2023, the Magistrate Judge terminated the prior R&R and issued a new R&R, Doc. #13, responding to the Amended Complaint, Doc. #11. In the R&R, the Magistrate Judge recommended that Wood be allowed to proceed with the civil conspiracy, unlawful arrest, and failure to intervene claims against all three Defendants in their individual capacities; the unlawful search of blood and malicious prosecution claims against Garmin and Reynolds in their individual capacities; the unlawful search of vehicle claim against Stortz in his individual capacity; and the *respondeat superior* claim against Garman in his individual capacity. Doc. #13, PageID #125. The Magistrate Judge further recommended that all other claims should be dismissed without prejudice, and that any appeal taken by Wood on this recommendation should not be allowed to proceed *in forma pauperis*. *See id.*

On August 28, 2023, Wood filed his Objections to the R&R, Doc. #14, which disputed the Court's exclusion of "*all* Defendants as liable persons for each and every claim under 28 U.S.C. § 1983," as well as the dismissal of his claims against Defendants in their official capacities representing German Township and the Clark County Sheriff's Department.

On May 8, 2024, this Court overruled all of Wood's objections and adopted the R&R. Doc. #16. Wood filed his Motion for Reconsideration of the Court's decision, Doc. #19, in which he continued to press his argument that all defendants

3

should be liable for each and every claim made against them. Wood thereafter filed

a Supplemental Motion for Reconsideration further arguing this position. Doc. #31.

This matter is ripe for review.

## II.    Factual Background

In summarizing Plaintiff's claims against Defendants, Plaintiff presents the

facts as follows:

> 7. On the evening of January 9, 2021, I was traveling to surprise visit a friend who I have known since grade school. . . .
>
> 8. At approximately 7:52 pm I reached the intersection of Folk Ream Rd. and St. Rt. 41 in German Township. I noticed a marked German Township SUV parked in a residential driveway, facing St. Rt. 41. After I turned right onto St. Rt. 41, passing in front of the SUV, an officer, now known as Anthony Reynolds, is heard saying on audio recording, "that's him".
>
> 9. At this time, I had never, seen, interacted with, nor even heard of Anthony Reynolds. However, Reynolds knew the description of me, my automobile and was determined to act against me based on a prejudiced assumption, to my detriment.
>
> 10. Reynolds then pulled out of the driveway and proceeded to follow me, because I'm Michael Wood, for approximately 4 miles, [or] 5 minutes[] and 36 seconds, hoping that I would commit a "traffic violation" to justify a colorable, pre-textual [sic] fishing expedition, to arrest me for anything under the sun, but specifically for OVI. . . .
>
> 11. At approximately 7:57 pm, I turned into the private driveway of the White residence, 5763 Ballentine Pk. . . .
>
> 12. After I parked my car on the black top driveway, directly in front of the White home (20-30 ft.), and turned the ignition off, I noticed the marked police SUV parked in the road with emergency lights on, blocking and obstructing a lane of travel on Ballentine Pk. and part of the private driveway.
>
> 13. Fearing that my safety and potentially my life was in jeopardy, I remained in my car.
>
> 14. Reynolds came onto the private property, approached the user side of my automobile and asked for my papers. I clearly and reasonably

4

claimed, invoked, asserted, exercised my 4th, 5th, 6th Amendment Rights and stated that I feared for my life.

15. Reynolds requested assistance to perpetrate a misguided, targeted, constitutionally offensive, kinetic operation.

16. Upon Reynold's request, Lt. Russell Garman, Deputy Zach Stortz and an unknown agent of the Highway Patrol responded to the 5763 address. After I was ordered to exit my car, I rolled up my windows and locked all of my doors. My glove box was locked, as it always is, and my trunk was secured as well.

17. I was coerced into getting out of my car by [the] perceive[d] threat of a violent extraction if I failed to submit to the order. I was immediately grabbed, pushed against my car and restrained with handcuffs behind my back.

18. I later found out, that [sic] at the point of handcuffing, I was effectively arrested for: Failure To Disclose One's Personal Information; Obstructing Official Business and Operating Vehicle Under Influence Of Alcohol And/Or Drug Of Abuse at 8:16 pm. . . .

19. After being placed in Reynold's SUV, I observed Deputy Stortz pull his marked Sheriff's SUV on to the private property then retrieved a "slim Jim" tool which he used to breech my car to remove a "Box of Bud Light beer, 7 Open Containers (cans) of Bud Light beer". . . .

20. However, none of the cans were "open containers"; they were all empty, crushed and several days[/]weeks old.

21. I was transported to the Clark County Jail, where prior to entering, Reynolds "searched" me[,] touching and rubbing my penis as I squirmed and yelled "Hey! Hey! Hey!; [sic] stop that's my penis." He then squeezed my penis.

22. He returned to rubbing down my right leg at the thigh/pocket area, but then he put the base of his palm under my crotch and testicals [sic] with pressure and pulled up on my genitals through my jeans. I yelled, "You just did it again" called him a f!%*ing [sic] homosexual and told him, "don't get down like that".

23. I was booked into the jail and held in the "bird cage", A small cell with only a protrusion of concrete from the wall to lay on and a grated whole in the floor as a toilet, while an invalid warrant was obtained, by Reynolds and Garman, at 11:10 pm on January 9, 2021, 3 hrs. 13 min. after the operation of vehicle, to draw the blood from the veins in my body. . . .

24. I was transported to the Springfield Hospital where the blood evidence was extracted by Kaitlyn Lare at 12:14 am on January 10,

5

2021, 4 hrs. 14 min. after operation of vehicle. Reynolds, Garman and an unidentified deputy were all present. . . .

25. I was returned to the "bird cage" in the Clark County Jail where I was held until approximately 9:15 am on January 10, 2021.

26. My car was towed from the private property by Maine's Towing (not Dan's) to the German Township Garage at 10:03 pm on January 9, 2021. . . . While in police possession, the glove box and trunk were unlawfully search[ed], presumably by Michael Stitzel, Chief of [P]olice.

27. I eventually received my car back, from Maine's on February 5, 2021. . . .

28. All charges were originally filed in the Clark County Municipal Court but were dismissed upon motion by the prosecutor after I was indicted for felony OVI.

29. After a suppression hearing, the trial court determined that there was no probable cause to arrest for OVI, suppressing all statements and evidence from the unlawful arrest.

30. The State, through the prosecutor, moved to dismiss the case. Sometime prior to the end of April 2021, the judge dismissed the case, State v Wood, 21-CR-32, upon said motion.

See Doc #1, PageID ##2–6. Wood also filed an Amended Complaint, Doc. #11,

which incorporated his previous complaint, elaborated on his claims, and added

additional facts:[1]

3. When I was in Reynold's SUV, parked on the road, Reynolds, Garman and Stortz were all standing around looking into my car and communicating with one another in the driveway, on White's private property. They were, presumably, conspiring to break into my car. They all agreed [sic] and the final decision was effectuated by Stortz.

4. A tow truck arrived at the White's address. Garman and Reynolds were both talking on their cell phones to unknown persons, (presumably prosecutor Kevin Miller and Michael Stitzel, chief of German Township

---

[1] The Amended Complaint, Doc. #11, includes more facts than those restated here. However, because they are duplicative, mixed statements of fact and law, or otherwise irrelevant to the instant order, they are not included here.

6

Police) still actively participating in the scene, while Stortz was using the "slim-jim," i.e., criminal tool, to break into my car to search for and seize evidence to be used against me in a prosecution for OVI.

5. All named defendants, Reynolds, Garman and Stortz, participated in my unlawful arrest and were still on scene when my car was searched. Reynolds, Garman and Stortz were all present at the private property until I was transported to jail by Reynolds. Garman and Stortz stayed after with the tow truck driver and cleared the scene that Reynolds arbitrarily and maliciously created.

6. When I went to Maine's Towing and Recovery to retrieve my stolen property on Feb 4, 2021, costing me $252.04, the tow truck driver from the night of January 9, 2021 [sic] opened the yard gate and took me to my car. He stated that he "was on scene [at the White address] for two hours before he could hook up [to my car] because they [defendants] were trying to figure out a way to search the glove box and trunk 'because there might have been a gun in the glove box or a dead body in the trunk."' Which is why it was originally seized and taken to the German Township Police garage.

7. I can only, reasonably, presume that Reynolds and Garman made the final decision to have my car towed to the German Township garage in order to have more time to scheme a way to search the glove box and trunk for evidence of other crimes and Stortz participated and/or failed to intervene.

8. As I was beginning the book-in process at the Clark [C]ounty jail, where I was unlawfully imprisoned for more than 13 hours, Garman and Reynolds both left together to get the invalid warrant signed. Later, after I was processed and held in the bird cage, they both returned together with the warrant signed by judge O'Neill. Reynolds and Garman were attached at the hip from the moment Garman showed up at the White residence and presumably after the blood draw was effectuated to conspire with Reynolds in the fabrication of all documents and the "story" to tell.

9. Reynolds and Garman presented false, misleading statements to the judge in order to influence and persuade him to issue the "invalid" search warrant.

10. The warrant was not "valid" because it was not even signed within the three-hour time limit, "from the operation of the vehicle," i.e. "alleged offense," proscribed to effectuate the warrant, [i.e.,] to actually draw the blood.

7

11. The blood was not drawn until four hours and seventeen minutes "from the operation of the vehicle."

12. The fabricated, false and misleading statements presented by Reynolds and Garman to the judge and in the affidavit continued and were presented with intent to mislead and influence the prosecutor to charge me with OVI and the grand jury to indict.

13. After hiring an attorney, costing $12,000.00 in legal fees, a motion was filed for a suppression hearing challenging the lawfulness of the arrest for OVI.

Doc. #11, PageID ##83–85.

## III. Motion for Reconsideration Standard

While motions for reconsideration are not expressly provided for in the Federal Rules of Civil Procedure, part of this Court's inherent authority to manage its cases is the ability to reconsider interlocutory decisions; "every order short of a final decree is subject to reopening at the discretion of the district judge." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983). "Generally, a motion for reconsideration is only warranted when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Northeast Ohio Coal. for Homeless v. Brunner*, 652 F. Supp. 2d 871, 877 (S.D. Ohio 2009).

## IV. Analysis

Wood makes no arguments that this Court should reconsider the prior ruling based on either an intervening change of controlling law or newly available evidence. His request, therefore, must present a need for this Court to reconsider based on

8

clear error or manifest injustice. *Brunner*, 652 F. Supp. 2d at 877. While Wood never expressly alleges clear error or manifest injustice, this Court will nonetheless address the arguments raised in the motions.

In his motions, Wood continues to press the argument that all three defendants should be liable for each and every claim brought under 28 U.S.C. § 1983. Doc. #19, PageID #170. Wood argues that this wide swath of liability is justified after this Court's previous recognition that he adequately pled a civil conspiracy claim. Under his theory, the presence of a conspiracy means that the acts of each Defendant engaged in the conspiracy are integrally intertwined. Therefore, if all the actions are intertwined in the conspiracy, there can be no outside intervening act which would break the chain of causation, leading to Wood's ultimate conclusion that all Defendants are liable on each and every claim. Doc. #19, PageID #175. Wood also urges the Court to reconsider the prior ruling as it relates to the Defendants in their official capacities. Doc. #14, PageID #133.

Before this Court ventures to address the merits of Wood's arguments, however, it may be helpful to more expressly spell out what this Court's prior decision held. In the Decision and Entry Adopting the R&R, Doc. #16, this Court dismissed some individual claims against Garman, Reynolds, and Stortz, but permitted the civil conspiracy claim to go forward. *Id.*, PageID #151. Wood strenuously objects to this finding under the rationale that all three Defendants

9

participated in the arrest and were on scene when the car was searched. Doc. #14, PageID #133.

"As a general rule, mere presence at the scene of a search, without a showing of direct responsibility for the action, will not subject an officer to liability." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2024). Following this binding principle, this Court dismissed some of Wood's allegations, including the claims involving the search of his vehicle brought against Garman and Reynolds. Doc. #16, PageID #151. Despite Wood's arguments, this Court is powerless to overturn this established rule of law. There is another method, however, by which the Defendants may yet be held liable for the actions of another co-Defendant.

Sixth Circuit caselaw makes it clear that "[c]onspiracy allegations... allow a plaintiff to hold one conspirator responsible for another's actions under § 1983 because a coconspirator [sic] could face that liability at common law." *Chaney-Snell v. Young*, 98 F.4th 699, 721 (6th Cir. 2024). The Magistrate Judge recognized this principle in the R&R, stating that "even though Defendants may not be personally involved and therefore not individually liable for each claim as alleged, **they may all still be held liable for the violations of all Defendants as co-conspirators**." Doc. #13, PageID #107 (emphasis added). In other words, all three Defendants presently *may* be liable for each violation under a theory of a civil conspiracy, if the evidence so justifies.

10

Wood also urges the Court to reconsider the dismissal of the claims against the three Defendants in their official capacities. Doc. #14, PageID #133–35. Official capacity suits are, in effect, an action against an entity of which an officer is an agent. *Kentucky v.* Graham, 473 U.S. 159, 165 (1985). Because this type of claim necessarily involves a government entity, rather than merely an individual, courts require a showing that an entity's "policy or custom" encouraged a plaintiff's constitutional deprivation. *Id.* at 166. In his initial objections, Wood assumes that a policy approving the infringement of his constitutional rights must exist within the department, as evidenced by repeated encounters with the police. Doc. #14, PageID #135. In support of this theory, Wood cites several prior cases he filed alleging intentional infringement by various county and local police departments. *Id.* However, these prior cases consist largely of dismissed charges and do not present any evidence of a department-promulgated policy.

For example, *Wood v. Eubanks*, No. 3:18-cv-168 (S.D. Ohio 2018), *Wood v. Burchett*, No. 3:22-cv-11 (S.D. Ohio 2022) were voluntarily dismissed by the parties. It would be inappropriate for this Court to attempt to relitigate those cases and determine whether a constitutional violation occurred. Wood v. Warden, No. 3:19-cv-304 (S.D. Ohio 2019) was dismissed by this Court after Wood's claims were found to be meritless. *State v. Wood*, No. 2022-CA-36 (Ohio Ct. App. Aug. 25, 2023) and *State v. Wood*, No. 2022-CA-67 (Ohio Ct. App. Aug. 11, 2023) were

11

separate decisions stemming from different interactions with the police. In both decisions, however, the appellate court determined that the police had not violated Wood's constitutional rights. Wood also cites to two cases containing allegations brought by other defendants, but this fails to support the assertion that an official policy to infringe on **his** constitutional rights exists. *Nolan v. Clark Cnty. Bd. Of Cnty. Comm'rs*, No. 3:21-cv-330, 2022 U.S. Dist. LEXIS 202979 (S.D. Ohio Nov. 7, 2022); *Boyce v. City Hall*, No. 3:19-cv-181, 2019 U.S. Dist. LEXIS 125510 (S.D. Ohio July 26, 2019).

Ultimately, Wood asks this court to examine his history of litigation, including cases voluntarily dismissed by him and cases involuntarily dismissed by both federal and state courts, and conclude that the mere existence of the cases shows the presence of an official policy designed against him. This is a bridge too far. This Court cannot reach such a conclusion, cannot find a plausible basis to believe that such an official policy exists, and therefore must dismiss the claims against the Defendants in their official capacity.

This Court previously ruled that all claims against the Defendants in their official capacity were to be dismissed. Doc. #16, PageID #162. The Court also dismissed some claims against the Defendants in their individual capacities where there were not sufficient allegations to support a plausible finding that the individual Defendant had engaged in the action. *Id.* However, the Court permitted Wood's civil

conspiracy claim to go forward which, if the evidence so shows, will permit Wood to hold all Defendants accountable for all actions taken in furtherance of the conspiracy. Because this Court sees no clear error or manifest injustice present in the prior ruling, Wood's Motion for Reconsideration, Doc. #19, and Supplemental Motion for Reconsideration, Doc. #31, are OVERRULED.

## V. Conclusion

For the reasons set forth above, Wood's Motion for Reconsideration, Doc. #19, and Supplemental Motion for Reconsideration, Doc. #31, are OVERRULED.


Date: November 7, 2024        *Walter H. Rice*

                         WALTER H. RICE
                         UNITED STATES DISTRICT JUDGE