IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL WOOD,                    :

      Plaintiff,

   v.                           :           Case No. 3:22-cv-351

ANTHONY REYNOLDS, et al.,                    JUDGE WALTER H. RICE

      Defendants.              :

---

DECISION AND ENTRY OVERRULING PLAINTIFF MICHAEL WOOD'S MOTION FOR SUMMARY JUDGMENT (DOC. #48); SUSTAINING DEFENDANTS ANOTHONY REYNOLDS'S AND RUSSELL GARMAN'S MOTION FOR SUMMARY JUDGMENT (DOC. #60); SUSTAINING DEFENDANT ZACH STORTS'S MOTION FOR SUMMARY JUDGMENT (DOC. #61); OVERRULING AS MOOT DEFENDANT ZACH STORT'S MOTION TO STRIKE (DOC. #70); JUDGMENT TO ENTER IN FAVOR OF DEFENDANTS AND AGAINST PLAINTIFF; TERMINATION ENTRY

---

This matter comes before the Court on four separate motions, three of which seek summary judgment. Plaintiff Michael Wood ("Plaintiff") filed a Motion for Summary Judgment against Defendants Anthony Reynolds ("Reynolds"), Russell Garman ("Garman"), and Zach Storts[1] ("Storts") (collectively, "Defendants"). Doc. #48. Defendants Reynolds and Garman filed a joint response in opposition, Doc.

---

[1] The Docket, as well as some of the previous filings on this case, mistakenly refer to Zach Storts as "Zach Stortz."

#60, and Defendant Storts filed a separate response in opposition to the motion. Doc. # 53. Plaintiff filed a single combined reply in support of his motion. Doc. #65.

The joint response filed by Defendants Reynolds and Garman also contained their own Motion for Summary Judgment. Doc. #60. Plaintiff's reply in support of his motion doubled as his response to the Motion for Summary Judgment filed by Defendants Reynolds and Garman. Doc. #65. Defendants Reynolds and Garman filed a reply in support of their motion. Doc. #67.

Defendant Storts also filed a Motion for Summary Judgment. Doc. #61. Plaintiff's reply in support of his motion (which served as the response in opposition to the motion filed by Defendants Reynolds and Garman) also served as his response in opposition to the motion filed by Defendant Storts. Doc. #65. Defendant Storts thereafter joined in the reply filed by Defendants Reynolds and Garman, which also served as the reply in support of his motion. Doc #67.

After this series of filings, all three motions for summary judgment are fully briefing and ripe for decision. Several weeks after the close of briefing, Plaintiff filed a "Notice" in which he asks the Court to take judicial notice of several of his allegations. Doc. #69. Defendant Storts moved to strike this filing as an unauthorized sur-reply. Doc. #70. Plaintiff responded by filing an "Objection" to Storts's motion. Doc. #71.

2

For the reasons set forth below, Plaintiff's Motion for Summary Judgment is OVERRULED and Defendants' Motions for Summary Judgment are both SUSTAINED. Defendant Storts's Motion to Strike is OVERRULED AS MOOT.

## I. Legal Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

3

(1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advoc. Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the factfinder. 10A Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 2726 (1998). In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal*

*Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). If it so chooses, however, a court may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

## II.    Procedural and Factual Background

This dispute rises as a result of traffic stop conducted on January 9, 2021. On that evening, Plaintiff was driving an Oldsmobile sedan in Clark County, Ohio. At some point that evening, Defendant Reynolds, who was driving a marked German Township police SUV, began following Plaintiff. Plaintiff later turned into a residential driveway where he parked his car and refused to identify himself. During his conversation with Plaintiff, Reynolds observed a "strong odor of an alcoholic beverage" coming from Plaintiff, noticed that Plaintiff's eyes appeared glassy and bloodshot, and saw both an open box of Bud Light and an open, partially crushed can on the passenger seat.

Defendants Storts and Garman arrived later and Storts was able to identify Plaintiff from prior interactions. When Reynolds once again instructed Plaintiff to step out of the vehicle, Plaintiff complied and was handcuffed and secured in Reynolds's police cruiser. Having confirmed Plaintiff's identity, Storts checked his driving record and discovered that Plaintiff did not have a valid driver's license. At that point, Plaintiff was arrested for two state offenses: R.C. § 4510.11(A) (driving under a suspension) and R.C. § 4510.14(A) (driving under an OVI suspension).

5

Once Plaintiff was under arrest, Reynolds called Assistant Prosecuting Attorney, Kevin Miller, to determine the next steps. The officers, along with Mr. Miller, determined that Plaintiff's vehicle needed to be impounded and inventoried, but Plaintiff had locked the vehicle and refused to turn over the keys. After seeking Plaintiff's assistance with gaining access to the vehicle, and being denied, Storts and Reynolds used a "slim jim"[2] tool to unlock the vehicle. At this point, Reynolds searched and inventoried that vehicle before transporting Plaintiff to the Clark County Jail.

While Reynolds was on the phone with Miller, it was determined that Reynolds should seek to obtain a warrant to draw blood from Plaintiff, to determine whether Plaintiff was intoxicated. After Miller prepared the warrant, Reynolds met with Clark County Court of Common Pleas Judge Richard O'Neill, who signed the warrant to draw blood from Plaintiff. Reynolds and Garman transported Plaintiff to the Springfield Medical Center where four vials of blood were drawn.

Plaintiff's state charges were officially filed via an indictment several days later. On March 22, 2021, the Clark County Court of Common Pleas determined that Defendants lacked probable cause to arrest Plaintiff and suppressed all evidence found. The charges against Plaintiff were dropped the next day.

---

[2] A "slim jim" tool is a special instrument specifically designed to open locked car doors.

6

Plaintiff filed this lawsuit on December 1, 2022, alleging ten claims: (1) unlawful arrest for failure to ID ("Claim One"); (2) unlawful arrest for obstructing official business ("Claim Two"); (3) unlawful arrest for OVI ("Claim Three"); (4) unreasonable search of car/seizure of contents ("Claim Four"); (5) unreasonable seizure of car ("Claim Five"); (6) unreasonable search for contact with [Plaintiff's] genitals ("Claim Six"); (7) unreasonable search/seizure of blood ("Claim Seven"); (8) malicious prosecution for failure to ID ("Claim Eight"); (9) malicious prosecution for obstructing official business ("Claim Nine"); (10) malicious prosecution for OVI ("Claim Ten"). Doc. #1.

On January 24, 2023, the United States Magistrate Judge issued an initial Report and Recommendations which properly attempted to recharacterize Plaintiff's Claims into recognizable causes of action. Doc. #5. These categories of claims were:

A. Fourth and Fourteenth Amendment false arrest claims of "failure to ID," Obstructing Official Business, and "OVI;"
B. Fourth and Fourteenth Amendment unreasonable search and seizure claims for search of his car, for contact with his genitals during a pat down, and search of his blood;
C. Fourth and Fourteenth Amendment malicious prosecution claims, (failure to ID, Obstructing Official Business, OVI);
D. Nine claims of conspiracy to interfere with constitutional rights under 42 U.S.C. § 1985; and
E. Nine claims of failure to prevent conspiracy to interfere with constitutional rights under 42 U.S.C. § 1986.

7

Doc. #5, PageID #42. Plaintiff amended his Complaint on March 9, 2023, providing additional allegations which the Magistrate Judge considered to be claims for civil conspiracy, *respondeat superior*, failure to intervene, and guilt by association. Doc. #11. After the Amended Complaint was filed, the Magistrate Judge filed a second Report and Recommendations in which she recommended that only the following claims be permitted to continue into discovery:

A. Plaintiff's civil conspiracy claim against Defendants Reynolds, Garman, and Stort[s] in their individual capacities;

B. Plaintiff's unlawful arrest claim against Defendants Reynolds, Garman, and Stort[s] in their individual capacities;

C. Plaintiff's unlawful search claim for the search and seizure of Plaintiff's vehicle and its contents against defendant Stort[s] in his individual capacity;

D. Plaintiff's unlawful search of blood against defendants Garman and Reynolds in their individual capacities;

E. Plaintiff's malicious prosecution claim against defendants Garman and Reynolds in their individual capacities;

F. Plaintiff's *respondeat superior* claim against defendant Garman in his individual capacity as to the wrongful arrest claim brought against defendant Reynolds; and

G. Plaintiff's failure to intervene claim against Stort[s], Garman, and Reynolds in their individual capacities for failure to intervene regarding all Defendants participation in Plaintiff's arrest, and against Garman and Reynolds for their failure to intervene regarding Stort[s]' search and seizure of Plaintiff's vehicle and its contents.

Doc. #13, PageID #125. The Court adopted these recommendations in their totality. Doc. #16.

Following the end of discovery, all parties moved for summary judgment in their favor. Though, as described above, the web of responses and replies is

8

somewhat more tangled in this case than in others, at this point all motions have been fully briefed and are ripe for review.

## III.  Analysis

Many of Plaintiff's remaining claims are based on 42 U.S.C. § 1983, which creates a cause of action allowing a plaintiff to sue state actors who violate their constitutional rights. *Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1008 (6th Cir. 2022). However, to recover, Defendants' actions must be outside the protection offered by the doctrine of qualified immunity. Qualified immunity protects government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would know." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The Sixth Circuit uses a three-part test to determine whether qualified immunity applies in a given case: (1) did a constitutional violation occur; (2) was the right that was violated a clearly established right of which a reasonable person would have known; and (3) did the plaintiff allege sufficient facts supported by sufficient evidence to indicate that the official's alleged actions were objectively unreasonable in light of clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999). As the analysis below shows, Plaintiff fails to show that a constitutional violation occurred and therefore cannot meet the first prong of this test.

### A.    Unlawful Arrest

Plaintiff's unlawful arrest claim is a § 1983 claim, requiring evidence that Defendants violated Plaintiff's constitutional rights. More specifically, "[i]n order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002). Probable cause exists when there is "reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that [an individual] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

In the context of a claim for unlawful arrest, "[a]s long as the arrest is supported by probable cause on one charge, then a false arrest claim cannot move forward." *Howse v. Hodous*, 953 F.3d 402, 409 (6th Cir. 2020). Defendants submit five different criminal offenses that they believe were supported by probable cause at the moment of arrest including (1) obstructed license plate; (2) fictitious license plate; (3) failure to identify himself; (4) driving under suspension; and (5) driving under the influence. Doc. #53, PageID #425–28; Doc. #60, PageID #491–93.

Plaintiff's response is two-fold. First, he argues that the Clark County judge's finding that the OVI arrest was unsupported by probable cause is conclusively

binding on the probable cause issue. Doc. #65, PageID #555. Second, he invokes a recent decision by the Supreme Court of the United States to argue that an invalid arrest overrides any other lawful rational for the arrest, making the whole process improper. *Id.* (citing *Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556 (2024)).

Plaintiff's reliance on *Chiaverini* is misplaced. In that case, the Court dealt with an issue pertaining to malicious prosecution and held that a single lawful charge cannot immunize additional malicious charges from being subject to a subsequent civil suit for malicious prosecution. *Chiaverini*, 602 U.S. at 561. The Court determined that the proper inquiry is one into causation: did the unlawful conduct *cause* the implementation of a seizure or extend the seizure. *Id.* at 564–65.

Here, there was clear probable cause to arrest Plaintiff for driving with a fictitious license plate. Plaintiff was indisputably driving an Oldsmobile sedan which was displaying a license plate belonging to a 2007 Chevrolet Truck. This is a clear violation of Ohio Revised Code (R.C.) § 4549.08(A)(3). Regardless of whether probable cause existed for the other charges, his fictitious plate violation petmitted his arrest. Under the Sixth Circuit's direction in *Howse*, this presence of probable cause requires the dismissal of Plaintiff's unlawful arrest claim. *Howse*, 953 F.3d 402 at 409. Therefore, this claim is DISMISSED.

11

## B.   Unlawful Search

Plaintiff has two unlawful search claims. One relates to the alleged unlawful search and seizure of Plaintiff's vehicle and its contents and is brought against Defendant Storts. The second is an unlawful search of blood claim, brought against Defendants Garman and Reynolds.

### 1.   *Search Of Vehicle*

Pursuant to Plaintiff's arrest, his vehicle was searched without a warrant. Defendant Storts argues this search was done properly, under the "inventory search" exception to the general warrant requirement. Doc. #53, PageID #429–31; *see United States v. Snoddy*, 976 F.3d 630 (6th Cir. 2020). Inventory searches are recognized exceptions to the warrant requirement usually imposed by the Fourth Amendment. *Colorado v. Bertine*, 479 U.S. 367, 371 (1987). "A vehicle is lawfully seized and, thus, subject to an inventory search if it is lawfully impounded." *Snoddy*, 976 F.3d at 634. Law enforcement officers may exercise discretion to impound a vehicle "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Colorado v. Bertine*, 479 U.S. 367, 375 (1987).

The German Township Police Department has a policy in place to determine when impoundment of a vehicle is necessary. Under this policy, officers are permitted to impound any vehicle that falls into one of seven categories, including:

12

"(1) When authorized by State Law or local ordinance . . . [and] (7) When in the judgment of the officer, it is necessary to protect the safety and integrity of the vehicle and/or its contents." Doc. #53-5, PageID #454. Under Ohio law, if an offender is convicted of driving under an OVI suspension, impoundment of the vehicle in question is required. R.C. § 4510.14(B)(1)(d), (2)(d).

Plaintiff argues that his license was not under suspension at the time of the incident because he never had a valid license in the first place, reasoning that "[o]ne cannot suspend that which does not exist". Doc. #48, PageID #291 (quotation omitted). Some Ohio cases appear to present dicta that supports such a line of reasoning, but they do not use that argument to support a legal finding. *See State v. Williams*, 477 N.E. 2d 656, 657–58 (Ohio Ct. App. 1984) (granting defendant's assignment of error wherein he argued that a prior conviction for driving under suspension precluded a subsequent conviction for driving without a license); *State v. Davis*, 2002-Ohio-6778, *2 (Ohio Ct. App. 2002) (rejecting defendant's assignment of error because record displayed sufficient evidence that license was suspended). To the contrary, the Court is convinced by the recent opinion in *State v. Lewis*, which held that a non-existent license can be suspended, resulting in additional restrictions should a license eventually be sought. *State v. Lewis*, 2020-Ohio-4633, *4–5 (Ohio Ct. App. 2020).

13

Here, Plaintiff was under an OVI suspension when the incident occurred. Doc. #53-4, PageID #442. Considering the evidence present during the incident, that Plaintiff was driving a vehicle on public roadways, Defendants possessed sufficient probable cause to believe he was in violation of Ohio law. As a result of the presence of probable cause, Plaintiff's vehicle was properly impounded pursuant to both the German Township Police Department policy and Ohio law. Because the vehicle was properly impounded, the search conducted during that impoundment was also lawfully conducted. Therefore, this claim is DISMISSED.

### 2. *Seizure of Blood*

Generally, "[p]olice officers are entitled to rely on a judicially secured warrant for immunity from a § 1983 action for illegal search and seizure unless the warrant is so lacking in indicia of probable cause that official belief in the existence of probable cause is unreasonable." *Yancey v. Carroll Cnty.*, 876 F.2d 1238, 1243 (6th Cir. 1989). However, where an officer knowingly makes false statements and omissions to the judge leading to the issuance of the warrant, the officer is not entitled to rely on the judicial determination. *Id.*

Plaintiff's theory of liability relating to the blood draw is two-fold. First, Defendants should have known that the blood draw was unconstitutional as it was taken more than three hours after the interaction began. Doc. #48, PageID #324. Second, Defendants fabricated testimony and presented deliberately false and

14

materially misleading statements in pursuit of obtaining the search warrant. *Id.* at PageID #324–25. His first point fails because the Supreme Court of Ohio has determined that the statutory time limit on blood samples is waived so long as the administrative requirements are substantially complied with.[3] *State v. Hassler*, 875 N.E.2d 46 (Ohio 2007); see also *State v. Waldock*, 33 N.E.3d 505 (Ohio Ct. App. 2015) (rejecting argument to suppress blood sample as untimely); *State v. Barger*, 91 N.E.3d 277 (Ohio Ct. App. 2017) (same); *State v. Bordeau*, 217 N.E.3d 945 (Ohio Ct. App. 2023) (same).

Plaintiff's second argument, that Defendants knowingly lied and presented false information to the judge, is unsupported. Admitting that the state court never addressed the issue of false statements, Plaintiff attempts to shift the burden to Defendants on the issue. Doc. #48, PageID #325. In his view, Defendants *must* have lied if the state court ultimately invalidated the warrant after the fact.

The application for the search warrant was filed as an attachment to one of Defendants' briefs. Doc. #60-2, PageID #512–13. Despite having this attachment,

---

[3] As an example of administrative requirements, R.C. § 4511.19(D)(1)(b) requires that "[o]nly a physician, a registered nurse, an emergency medical technician-intermediate, an emergency medical technician-paramedic, or a qualified technician, chemist, or phlebotomist shall withdraw a blood sample for the purpose of determining the alcohol, drug, controlled substance, metabolite of a controlled substance, or combination content of the whole blood, blood serum, or blood plasma."

Plaintiff does not identify any examples of lies, false information, or misstatements contained within the application. At this stage, Plaintiff cannot rely on unsupported generalities to continue his case, especially in light of evidence presented to the contrary. Because there is no evidence that Defendants presented false information in pursuit of a search warrant, and because Ohio does not require strict compliance with the three-hour blood testing deadline, Plaintiff's claim is DISMISSED.

### C. Failure to Intervene

"Law enforcement officers have a duty to intervene to protect the constitutional rights of citizens from infringement from other law enforcement officers." *Bunkley v. City of Detroit, Mich.*, 902 F.3d 552, 565 (6th Cir. 2018) (internal quotation omitted). Failure to intervene is considered a claim brought under §1983, though there is an open question within the Sixth Circuit regarding the precise source of the cause of action. *Chaney-Snell v. Young*, 98 F.4th 699, 721 (6th Cir. 2024). Regardless, an officer may be liable if that officer "observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official." *Anderson v. Branen*, 17 F.3d 552, 557 (2nd Cir. 1994); *Bunkley*, 902 F.3d at 565–66.

Here, Defendants may be liable if Plaintiff presents facts to support the proposition that any of the three *Anderson* situations was unfolding on the night in

question. In this matter, the requirement proves unobtainable. There are no allegations that excessive force was used that evening, and this Court has explained the lack of allegations supported a finding that a constitutional violation occurred. Defendant attempts to argue that he was unjustifiably arrested because his OVI charges were later dismissed after the evidence was suppressed. Doc. #48, PageID #334. ("Even though I was *actually* arrested for failure to comply with the lawful order of police, at the moment of arrest, at that time, I was also *effectively* arrested for every violation officially charged which accrued during the unlawful custodial arrest.) (emphasis in original). As explained above, this reasoning is incorrect, and Plaintiff's arrest was lawful. Therefore, Defendants did not have a duty to intervene, nor are they subject to claims stemming from a failure to intervene. This claim is DISMISSED.

### D. *Respondeat Superior*

Ordinarily, "§ 1983 liability must be based on more than *respondeat superior*, or the right to control employees." *Shehee v.* Luttrell, 199 F.3d 295, 300 (6th Cir. 1999). There is a narrow exception to this rule which permits liability to a superior office if they "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesces in the

unconstitutional conduct of the offending officers." *Hayes v. Jefferson Cnty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982).

Here, this claim fails for a simple reason. *Respondeat superior* is premised on a finding of underlying unconstitutional conduct. As extensively explained above, there is no unconstitutional conduct in this case, so there cannot be vicarious liability for the unconstitutional conduct. Therefore, this claim is DISMISSED.

### E. Civil Conspiracy

To be successful on a claim for civil conspiracy under § 1983, plaintiffs must show that "(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed." *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007). At the summary judgment stage, plaintiffs are entitled to "rely on circumstantial evidence to establish an agreement among the conspirators," but the claims "must be pled with some degree of specificity and [] vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff brought several allegations involving violations of his constitutional rights against Defendants. To this point, each of them has failed. The Court recognizes that a successful claim for civil conspiracy does not require successful

18

infringement of rights, only a conspiratorial plan. Yet, in this case, this is a distinction without a difference. Plaintiff has failed to present evidence supporting his claim of a civil conspiracy in the face of Defendants' evidence showing the lack thereof. In short, Plaintiff's bare allegations do not support any of the three elements identified in *Revis*. As a result, this claim is DISMISSED.

### F. Malicious prosecution

Unlike the other claims, malicious prosecution is not a § 1983 claim premised on unconstitutional actions. Instead, malicious prosecution is an Ohio tort which requires that the plaintiff prove: "(1) Malice in instituting (or continuing) the prosecution, (2) lack of probable cause, and (3) termination of the action in favor of the defendant." *Swiecicki v. Delgado*, 463 F.3d 489, 503 (6th Cir. 2006). "As a general rule, the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause. However, an exception applies where the indictment was obtained wrongfully by defendant police officers who knowingly presented false testimony to the grand jury." *Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014) (quotation omitted).

Here, Plaintiff was indicted by a grand jury for felony OVI. Doc. #48, PageID #281. Therefore, the only method by which Defendants may be liable for malicious prosecution requires a showing that they presented false testimony to the grand jury. Plaintiff attempts to make this argument, but does so in merely conclusory

19

fashion, failing to point to any factual allegations to support his position. *Id.* ("I was later indicted for felony OVI based on the same deliberately false and materially misleading statements used to obtain the invalid and void warrant."). Plaintiff cannot continue to pursue claims by merely restating the conclusions he hopes to prove, he must allege facts which support that conclusion and present evidence that might justify a juror to find in his favor. *See Turner v. Henley Appraisals, LLC*, No. 3:23-cv-371, 2025 WL 775274, *5–6 (S.D. Ohio Mar. 11, 2025) (Rice, J.). Because Plaintiff has not produced evidence to rebut the presumption that the grand jury indictment was proper, this claim is DISMISSED.

## G.    Motion to Strike

Defendant Storts filed a Motion to Strike Plaintiff's filing dated July 28, 2025, as an unauthorized sur-reply. Doc. #70. Plaintiff does not present his filing as a sur-reply. In his Objection to the motion, he disavows that conclusion, stating that he was "merely emphasizing facts apparent from the record and that I will testify to at trial." Doc. #71, PageID #578.

The Court will assume, *arguendo*, that Plaintiff's view is correct, and the filing is nothing more than a notice to the court having nothing to do with the motions. Given that the motions above are to be sustained in favor of defendants and the case dismissed, the filing will thus be inconsequential.

However, even if the Court views the filing as an attempted sur-reply, then it should be struck. Under the Local Rules, a motion may be followed by a response in opposition to the motion and a reply by the movant in support of the motion. S.D. Civ. R. 7.2(a)(2). However, "[n]o additional memoranda beyond those enumerated are permitted except upon leave of court for good cause shown." *Id.* Plaintiff indisputably did not seek leave to file a sur-reply. Considering Plaintiff's pro se status and reading his filings in the light most favorable to him, the Court does not find good cause shown for filing a sur-reply. If this filing is a sur-reply it should be stricken.

Given the analysis in this Decision, the Court does not need to conclusively determine whether this filing was a sur-reply or not. If the filing was a sur-reply, it would be stricken and excluded from consideration for the purposes of the motions for summary judgment. If the filing was not a sur-reply, it still would not be considered for the purposes of the motions for summary judgment. Further, as the determination of the motions for summary judgment lead to the termination of the case, it is immaterial whether Plaintiff's filing is an attempt at a sur-reply or not. Therefore, Defendant Storts's Motion to Strike, Doc. #70, is OVERULED AS MOOT.

## IV. Conclusion

For the reasons set forth above, the Motion for Summary Judgment filed by Plaintiff Michael Wood, Doc. #48, is OVERRULED. The Motion for Summary

21

Judgment filed by Defendants Anthony Reynolds and Russell Garman, Doc. #60, is SUSTAINED. The Motion for Summary Judgment filed by Defendant Zach Storts, Doc. #61, is SUSTAINED.

Judgment is to be entered in favor of Defendants and against Plaintiff.

The above captioned case is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date: September 3, 2025

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

22